# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4488 | **DATE** | February 11, 2002 |
| **CASE TITLE** | *Keva Parker v. 1-800 Bar None, et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, Defendant Bar None's and Defendant Gateway's Motions to Dismiss [12-1, 23-1] are DENIED. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 12 2002 | |
| | Notified counsel by telephone. | | date docketed | 34 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | CM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 02 FEB 12 AM 8:40 | | |
| RTS | courtroom deputy's initials | FILED-TO | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
FEB 1 2 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVA PARKER,<br><br>  Plaintiff,<br><br>v.<br><br>1-800 BAR NONE, A FINANCIAL CORPORATION, INC., and GATEWAY CHEVROLET, OLDSMOBILE, INC.,<br><br>  Defendants. | Hon. Blanche M. Manning<br><br>Case No. 01 C 4488 |

## MEMORANDUM AND ORDER

Plaintiff Keva Parker brings this action against Defendants 1-800 Bar None, a Financial Corporation, Inc. ("Bar None") and Gateway Chevrolet, Oldsmobile, Inc. ("Gateway"), pursuant to the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 et seq., alleging that Bar None and Gateway engaged in fraudulent practices to entice consumers with "subprime" credit to borrow money to buy cars. This matter comes before this Court on Defendants' Motions to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' Motions to Dismiss are DENIED.

# BACKGROUND[1]

Bar None contracts with automobile dealers, such as Gateway, to generate subprime financing leads. To generate leads, Bar None advertises in the local news media that it can obtain or provide auto financing for anyone, no matter how bad his or her credit, and that it can "restore your credit." Consumers who call in response to the advertisement are referred to local dealers, such as Gateway, who pay Bar None for the referrals.

In late April 2001, Parker saw a Bar None television commercial that represented that no matter how bad the viewer's credit, that he or she could "get the car you need and deserve that day," and that Bar None could help "restore credit." Parker called the number in the ad, was asked various questions, and was told to visit Donald Hund at Gateway. She was further instructed to bring a check stub, two phone bills, and her checkbook.

On May 2, 2001, Parker met with Hund at Gateway, and was shown a car which she wished to purchase but was told that she did not qualify for ordinary financing. Instead, Hund told her to write a check for $6000.00, representing the purchase price of the car, even though she did not and would not have that much money in her account. She was also told to sign a "hold check" agreement with NDC Check Services. Parker was told that the check would be held for thirty days, after which NDC would make payment arrangements with her. Parker did as she was instructed, and left with the car. Thereafter, she had approximately $200.00 worth of work performed on the car.

Soon after, however, Parker had second thoughts, and wondered if something might be wrong with the deal she had entered into with Gateway and NDC. She consulted the manager of

---

[1] The facts set forth in the Background section are taken from Parker's Complaint.

2

the bank where she had her checking account, who told her that she had been asked to write a bad check to a check guaranty company, and that this could ruin her credit rather than restore it. Parker then stopped payment on the check and returned the car to Gateway.

Parker subsequently filed this action against Bar None and Gateway alleging that they had engaged in misrepresentation of credit repair services in violation of the CROA. In response, Defendants Bar None and Gateway have filed Motions to Dismiss pursuant to Rule 12(b)(6).

## STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing allegations liberally and viewing them in the light most favorable to the plaintiff. See e.g. McMath v. City of Gary, 976 F.2d 1026, 1031 (7th Cir. 1992); Gillman v. Burlington N. R.R. Co., 878 F.2d 1012, 1022 (7th Cir. 1989). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Kunik v. Racine County, Wis., 946 F.2d 1574, 1579 (7th Cir. 1991).

The court will accept all well-pled factual allegations in the complaint as true. Miree v. DeKalb County, 433 U.S. 25, 27 n. 2 (1977). In addition, the court will construe the complaint liberally and will view the allegations in the light most favorable to the non-moving party. Craigs, Inc. v. General Electric Capital Corp., 12 F. 3d 686, 688 (7th Cir. 1993). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. Scott v. O'Grady, 975 F.2d 366, 368 (7th Cir. 1992).

3

## ANALYSIS

The CROA was enacted in 1994 as part of an amendment to the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601 et seq. Consumer Credit Reporting Reform Act, Sen. Rpt. 103-209 (Dec. 9, 1993). The Senate Committee found that:

> consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing. As a result, consumers who experience problems may seek assistance from credit repair organizations offering to improve the credit standing of such consumers. The Committee further finds that certain advertising and business practices of these organizations have harmed consumers, particularly consumers of limited economic means and who are inexperienced in credit matters.
> The purpose of [the CROA] is to ensure that consumers who utilize the services of credit repair organizations have the necessary information to make informed decisions regarding the purchase of those services and to protect the public from unfair and deceptive business practices by credit repair organizations.

Id. at § 402. The Report cites testimony from the Federal Trade Commission stating that

> [f]raudulent companies that lead consumers to believe that the companies can 'repair' bad credit histories have bilked consumers of millions of dollars in the past several years, have caused consumer reporting agencies to waste time and money reinvestigating spurious disputes, and have been the focus of numerous enforcement actions by the FTC.

Id. at § K. Congress itself found that

> economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this title to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against unfair and inaccurate credit billing and credit card practices.

15 U.S.C. § 1601(a).

In enacting the CCPA, of which the CROA is part of, Congress intended for courts to broadly construe its provisions in accordance with its remedial purpose. Brothers v. First

4

Leasing, 724 F.2d 789, 793 (9th Cir. 1984). Moreover, courts should construe consumer protection statutes "liberally [] in favor of" consumers. Bizier v. Globe Fin. Serv., Inc., 654 F.2d 1, 3 (1st Cir. 1981). It is in this context which this Court must rule on Defendants' Motions to Dismiss and the questions of law raised therein.

Defendants contend that Parker's Complaint should be dismissed because the she has failed to allege that: (I) Defendants are credit repair organizations under the CROA; (II) Defendants engaged in fraudulent practices as defined by the CROA; and (III) she suffered any damages. The Court will consider each of these arguments in turn.

### I.   Credit Repair Organizations Under the CROA

Defendants contend that Parker failed to plead sufficient facts to show that either Defendant is a "credit repair organization" under the CROA.[2]

The CROA defines a "credit repair organization" as:

(A) ... any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—
  (i)   improving any consumer's credit record, credit history, or credit rating; or
  (ii)  providing advice or assistance to any consumer with regard to any activity or service described in clause (i) ...

15 U.S.C. § 1679a(3)(A). Thus, to establish that a defendant is a credit repair organization under the CROA, a plaintiff must allege that the defendant: (1) used an instrumentality of interstate commerce or the mails; (2) to provide or sell, or represent that such person will provide or sell; (3) in return for valuable consideration; (4) for the types of services listed in clauses (i) and (ii).

---

[2] The Court notes that Parker has not alleged that Gateway is a credit repair organization under the CROA. However, as discussed below at pp. 7-10, Gateway does not need to be a credit repair organization to fall within the scope of the CROA because Parker has stated sufficient facts to properly allege that Gateway violated section 1679b.

5

Here, Parker alleges that Bar None "regularly advertises in local news media that it can obtain or provide auto financing for anyone, no matter how bad their credit, and that it can 'restore your credit.'" (Cmplt. at ¶ 12.) Therefore, the Court finds that Parker has alleged facts sufficient to satisfy elements 1 and 4. Bar None, however, contends that Parker has failed to plead sufficient facts to show that Bar None sold or represented it would sell services in return for valuable consideration.

Bar None argues because it only referred Parker to Gateway, who in turn referred her to NDC, that it did not provide any services to Parker as required under section 1679a(3)(A). The plain language of section 1679a(3)(A), however, does not require an entity to actually "provide" the services listed to qualify as a credit repair organization. Instead, the entity need only "represent" that it can or will provide such services. 15 U.S.C. § 1679a(3)(A); Sannes v. Jeff Wyler Chevrolet, Inc., 1999 WL 33313134, at *2 (S.D. Ohio, March 31, 1999). Here, Parker alleges that Bar None's advertisement stated that it could "'restore your credit,'" (Cmplt. at ¶ 12), a representation that Bar None did or could provide services such as those described in clauses (i) and (ii) of section 1679a(3)(A). Consequently, this Court holds that Parker has alleged sufficient facts to meet the "services" requirement of section 1679a(3)(A).

Bar None also contends that Parker has failed to sufficiently allege that Bar None received payment or other valuable consideration, as required by section 1679a(3)(A), because Parker cannot allege that she paid Bar None for the referral to Gateway. In support of this argument, Bar None relies on Sannes, 1999 WL 33313134. In Sanes, the plaintiff, who leased an automobile from the defendant car dealership, filed an action against the defendant alleging that an advertisement promising to "[r]e-establish your credit through one of the largest banks in

Ohio" violated the CROA. Id. at *1. After responding to the add, the plaintiff leased the vehicle from the defendant, who arranged financing through a bank (not named as a defendant). Id. The defendant moved to dismiss on the grounds that it was not a credit repair organization under the CROA because it "does not charge or accept the payment of money or other valuable consideration in return for the service." Id. at *2. When the consumer purchases a car from the defendant, the defendant only charges for the cost of the car, which is the same whether or not the plaintiff finances the car or not. Id. at *3. Based on the court's finding that the defendant did not charge an additional cost if the car was financed and its finding that Congress did not intend to include "auto dealerships, who arrange for purchase financing ancillary to their primary business of selling and leasing motor vehicles," the court concluded that the dealership was not a credit repair organization under the CROA. Id. at *4.

Here, however, unlike the defendant in Sannes, Bar None did not engage in offering financing assistance ancillary to some other, primary purpose. Bar None's advertisement purports to provide financing and credit repair services. (Cmplt. at ¶ 12.) Moreover, the situation here is distinct from that in Sannes where there were only two parties, the consumer and the dealership. Here, in contrast, we have a consumer, a dealership, and Bar None. While it is true that, like the plaintiff in Sannes, Parker did not pay directly for Bar None's credit services, unlike the dealership in Sannes, Bar None *was* paid for its services by Gateway, which paid Bar None for the referral of customers. Thus, the Court finds that this is sufficient to constitute payment required by section 1679a(3)(A).

The finding that Parker's Complaint sufficiently alleges payment of consideration is further supported by the plain language of section 1679a(3)(A) which only requires that a "credit

repair organization" receive "the payment of money or other valuable consideration." This section does not specifically require that the credit repair organization receive the consideration directly from the consumer, only that the credit repair organization receive consideration. Therefore, given the plain language of the statute and the broad remedial purpose in enacting the CROA, this Court finds that Bar None did not need to receive consideration directly from Parker to fall under section 1679a(3)(A).

This interpretation of the CROA is further supported by Bigalke v. Creditrust Corporation, 162 F. Supp. 2d 996, 998 (N.D. Ill. 2001), where this Court held that the plaintiff's payment of a debt to the defendant in return for removing the debt from her credit report was sufficient to establish "payment of money or other valuable consideration" even though no portion of the money was designated as a fee for that service. Moreover, construing the CROA as Bar None would like this Court to do would require this Court to put the form of the transaction over the substance of the actual transaction between Parker and Defendants. See James v. Ragin, 432 F. Supp. 887, 892 (W.D. N.C. 1977) (in construing the Truth in Lending Act, the "court should look at the substance of the transaction involved and not simply the form"). Thus, construing the complaint liberally and viewing the allegations in the light most favorable to the non-moving party, as this Court is required to do, Craig's, Inc., 12 F.3d at 388, this Court holds that Parker has pled facts sufficient to show that Bar None is a credit repair organization under the CROA.

## II. Deceptive and Fraudulent Practices Under the CROA

Even if this Court held that Bar None is not a "credit repair organization" under section 1679a(3)(A), Parker can nevertheless state a claim against Bar None and Gateway under section

8

1679b of the CROA. Under section 1679b(a), it is a violation of the CROA for any "person" to:

> (3) make or use any untrue or misleading representation of the services of the credit repair organization; or
>
> (4) engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

15 U.S.C. § 1679b(a)(3)-(4). Unlike section 1679a, section 1679b(a) applies to "persons" which encompasses a broader group than credit repair organizations. Bigalke, 162 F. Supp. 2d at 999; Vance v. National Benefit Assn., 1999 WL 731763, at *4 (N.D. Ill Aug 30, 1999). In Bigalke, this court explained that:

> even if this Court held that Creditrust was not a credit repair organization within the meaning of the act, section 1679b(a), which Bigalke alleges Creditrust violated, still applies to Creditrust. The plaintiff in Vance alleged that the defendant violated section 1679b(a)(3) and (4). The court held that the defendant, a bank, was not a credit repair organization because section 1679a(B)(iii) specifically excludes banks. Nevertheless, the court denied the defendant's motion to dismiss because it found that section 1679b(a) applies to "person[s]" which is a broader definition than that of a credit repair organization.

162 F. Supp. 2d at 999 (internal citations omitted). Thus, even had this Court concluded that Bar None is not a credit repair organization under the act, that finding would not be sufficient to dispose of Parker's claim against it. Likewise, regardless of whether Gateway is a credit repair organization under the act, section 1679b(a) applies to it as well.

Bar None, however, contends that even if it falls within the scope of section 1679b(a), Parker's Complaint should still be dismissed because Parker has failed to allege fraud or deceit with the particularity required by Federal Rule of Civil Procedure 9(b).[3] Rule 9(b) provides, in

---

[3] The Court notes that Gateway has not raise this defense.

relevant part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Therefore, the complaint must include "'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074 (7th Cir. 1997) (internal citations omitted).

Here, Parker's Complaint states when she saw Bar None's advertisement, how she contacted Bar None, that Bar None told her to contact Gateway; when and where she contacted Gateway, and the procedure Gateway told her to follow to improve her credit but in actuality could have further damaged her credit. Accordingly, this Court finds that Parker has met the Rule 9(b)'s heightened pleading requirements.

Defendants further contend that Parker has failed to alleged that they misrepresented their services as required by section 1679b(a)(3)-(4). Parker alleges that "Bar None regularly uses ... television ... to provide, or offer to provide consumers with a service, in return for money or other valuable consideration, which purports to improve the consumer's credit record." (Cmplt. at ¶ 14.) According to Parker, however, Bar None did nothing to improve her credit but simply provided her a referral to Gateway. (Id. at ¶ 8.) With respect to Gateway, Parker alleges that Gateway told her that the check hold agreement was a means by which she could simultaneously obtain financing and improve her credit. (Cmplt. at ¶ 9.) She further alleges, however, that the manager of her bank explained to her that she had been told to write a bad check, which would further damage her credit rather than restore it. (Id. at ¶ 11.) Reading these allegations in the light most favorable to the non-moving party, as this Court must do, Craig's, Inc., 12 F.3d at 388,

the Court finds that Parker's Complaint sufficiently alleges violations of section 1679b.

**III. Actual and Punitive Damages**

Finally, Bar None and Gateway contend that Parker's Complaint should be dismissed because she: (1) has not alleged actual damages as a result of Defendants alleged wrongdoing; and (2) is not eligible for punitive damages without actual damages.

Under section 1679g(a)(1), the court may award actual damages for violations of the CROA in "(A) the amount of any actual damage sustained by such person <u>as a result of such failure</u>; or (B) any amount paid by the person to the credit repair organization."15 U.S.C. § 1679g(a) (emphasis added). Therefore, under the plain language of section 1679g(a)(1), Parker need not establish that she incurred damages as a result of payments to Bar None or Gateway. Instead, she need only establish that she incurred damages <u>"as a result of" their violations</u> of the CROA. 15 U.S.C. § 1679g(a)(1)(A).

Here, Parker has alleged that she spent approximately $200 for repairs on the car prior to returning it to Gateway. Therefore, without purchasing the car, which occurred as a result of Defendants' actions, Parker would not have spent the $200 on the car which she later returned after learning that Defendants' actions put her credit in further jeopardy. Thus, construing the complaint liberally and viewing the allegations in the light most favorable to the non-moving party, as this Court is required to do, <u>Craigs, Inc.</u>, 12 F.3d at 688, this Court holds that Parker has alleged actual damages "as a result of" the Defendants' violations of the CROA.

Parker further contends that even if she failed to plead actual damages, she is still entitled to punitive damages. The CROA provides for the award of punitive damages in the following situations:

11

(A) Individual actions. In the case of any action by an individual, such additional amount as the court may allow.

(B) Class actions. In the case of a class action, the sum of–

 (i) the aggregate of the amount which the court may allow for each named plaintiff; and
 (ii) the aggregate of the amount which the court may allow for each other class member, without regard to any minimum individual recovery.

15 U.S.C. § 1679g(a)(2). Defendants contend that the term "additional" implies that punitive damages may be awarded only where actual damages are awarded.

Although courts have not yet addressed this exact issue, statutes with similar provisions which were enacted as part of the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601, et seq., suggest punitive damages may be awarded under the CROA without the award of actual damages. Moreover, in enacting the CCPA Congress intended for courts to broadly construe its provisions in accordance with its remedial purpose. Brothers v. First Leasing, 724 F.2d 789, 793 (9th Cir. 1984). Therefore, the Court will examine other credit protection statutes with similar language in construing whether a plaintiff is entitled to punitive damages under the CROA without proving actual damages. See Barmes v. U.S., 199 F.3d 386, 389 (7th Cir. 1999)("a particular section or sentence of a statute must be interpreted in the context of related sections and the purpose of the statute as a whole"); U.S. Fire Ins. Co. v. Baker Car Rental, 132 F.3d 1153, 1157 (7th Cir. 1997)(courts "must evaluate the statute as a whole and construe each provision in context with every other section").

For example, the FDCPA provides that plaintiffs may be awarded actual damages and "such additional damages as the court may allow, but not exceeding $1000." 15 U.S.C. § 1692k(a). In construing this section, courts have held that the FDCPA permits plaintiffs to

recover statutory damages regardless of the award of actual damages. See Keele v. Wexler, 149 F.3d 589, 593 (7th Cir. 1998); Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997). Similarly, the ECOA provides for punitive damages "in addition to any actual damages." 15 U.S.C. § 1691e(b). In Smith v. Lakeside Foods, Inc., 449 F. Supp. 171, 172 (N.D. Ill. 1978), the court held that under the ECOA, "even if plaintiff is unable to prove any actual damages, she may be entitled to declaratory or injunctive relief, or punitive damages and costs."

Accordingly, based on the case law construing other provisions of CCPA and the legislative purpose of CROA, this Court holds that punitive damages under section 1679g(a)(2) are not merely ancillary to actual damages, but are instead an independent basis for relief. Consequently, Parker's Complaint cannot be dismissed for failure to state a claim for damages.

## CONCLUSION

For the foregoing reasons, Defendant Bar None's and Defendant Gateway's Motions to Dismiss [12-1, 23-1] are DENIED. It is so ordered.

ENTER:

BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: 2-11-02